# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SAMMY TERRELL # 75616-012,
and RICHARD THOMPSON #20080-101

    Petitioners,                               Case No.05-72353

v.                                          HONORABLE DENISE PAGE HOOD

UNITED STATES OF AMERICA,

    Respondent.

_____/

## OPINION & ORDER REJECTING
## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This matter is before the Court on Magistrate Judge Paul Komives' Report and Recommendation dated February 3, 2006. Petitioners filed Objections to the Report and Recommendation on March 7, 2006.

The Magistrate Judge recommended that the Court deny Petitioners' petition for writ of habeas corpus. After careful review and consideration, the Court finds that the Magistrate Judge reached the incorrect conclusion for the reasons set forth below.

### II. FACTUAL BACKGROUND

Petitioners Sammy Terrell and Richard Thompson are federal prisoners serving life sentences for murder. Both are being boarded by the Federal Bureau of Prisons at the Michigan state facility in Marquette. Both Petitioners are subject to the pre-SRA (Sentencing Reform Act) statutes governing parole as both committed their crimes prior to November 1, 1987, the effective date of

the Sentencing Reform Act. Both Petitioners are eligible for parole and were scheduled for interim hearings before the Commission in February 2005, during the Commission's visit to the federal institution at Milan, Michigan. However, neither Petitioner was transferred to Milan and the hearings were rescheduled for May. Again in May, neither Petitioner was transferred to Milan for the hearings. The hearings were rescheduled for June 2005 and both Petitioners and their counsel were informed that the Commission intended to conduct both hearings by video conference. Both Petitioners objected to the use of video conferencing at the upcoming hearings, but the Commission's General Counsel rejected their requests for in-person hearings.

On June 14, 2005, Petitioners filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioners argue that 18 U.S.C.§ 4208(e), which states: "[t]he prisoner shall be allowed to appear and testify on his own behalf at the parole determination proceeding" requires in-person presence at their parole hearings. Respondents argue that as long as video conferencing allows the prisoner to be seen and heard by the examiner the requirements of § 4208(e) that the prisoner be allowed to appear and testify on his own behalf are satisfied.

### III. STANDARD OF REVIEW

The standard of review to be employed by the Court when examining a Report and Recommendation is set forth in 28 U.S.C. §636. This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1)(C). This Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

## IV. LAW & ANALYSIS

Magistrate Judge Komives held that this matter is governed by the Supreme Court's *Chevron* framework. *See Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council*, 467 U.S. 831; 104 S. Ct. 2778; 81 L. Ed. 2d 694(1984). The Court agrees with the Magistrate Judge. The Sixth Circuit outlined the steps a Court must make when evaluating an agency's interpretation of a statutory term under *Chevron*:

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Hospital Corp. of Am. & Subsidiaries* v. *Commissioner of Internal Revenue*, 348 F. 3d 136, 140 (6th Cir. 2003)(quoting *Chevron*, 467 U.S. at 842-43).

The Magistrate Judge determined that the central issue in this matter is whether the word "appear" in 18 U.S.C. § 4208(e) is ambiguous.[1] After reviewing the definition of the word "appear" in one source, the Magistrate Judge concluded that the word "appear" as used in § 4208(e) is ambiguous.[2] This conclusion was due to the fact that the first and third definitions of the word in Oxford's English Dictionary support the Government's contention that the word "appear" did not

---

[1] It should be noted that this is an issue of first impression in our Circuit, and no other Circuit has addressed this issue.

[2] The Magistrate Judge also looked to legislative history, but this provided no guidance on the Congressional intent behind § 4208(e).

3

mandate personal presence at Petitioners' parole release hearings, defining the relevant word as "[t]o come forth into view, as from a place or state of concealment, or from a distance; to become visible," and "[t]o be in sight, be visible," while the fourth definition supports Petitioners' argument, defining "appear" as "[t]o present oneself formally before an authority or tribunal; to put in an appearance."[3] The Magistrate Judge ignored the fact that words of common use, such as "appear", "[w]hen found in a statute must be given their ordinary meaning unless there be something in the context which compels a narrower or a different scope." *Marks* v. *United States*, 161 U.S. 297, 301; 16 S. Ct. 476; 40 L. Ed. 706 (1896). "Ambiguity is a creature not of definitional possibilities but of statutory context . . .[and] [t]he meaning of statutory language, plain or not, depends on context." *Brown* v. *Gardner*, 513 U.S. 115, 118; 115 S. Ct.552; 130 L. Ed. 2d 462 (1994). The appropriate definition of "appear" should be determined by reference to the context in which it is used. Section 4208(e) states that "[t]he prisoner shall be allowed to appear and testify on his own behalf at the parole determination proceeding." The fourth definition of "appear"[4] found in Oxford's English Dictionary, and in other sources, not only supports Petitioners' argument, it also squarely fits within the context of a parole determination proceeding.

Additionally, Petitioners argue that other statutes within Title 18 use appear in a manner

---

[3] Other sources support Petitioners' argument, the Merriam-Webster online dictionary defines "appear": "to come formally before an authoritative body <must appear in court today>" and "appearance": "the act, action, or process of appearing . . . the presentation of oneself in court as a party to an action often through the representation of an attorney"at http://www.m-w.com/dictionary. Similarly, "appear" is defined on the following website for law.com as: "for a party or an attorney to show up in court"at http://dictionary.law.com.

[4] "Appear:" "[t]o present oneself formally before an authority or tribunal; to put in an appearance"

4

suggesting live presence in court.[5] The Magistrate Judge ignored this fact and found that in each of the statutes cited by Petitioners, the word "appear" alone did not compel physical presence, but it was compelled by some type of formal legal process, such as a subpoena, or bail order. The Magistrate Judge overlooked the fact that these processes compel appearance, requiring physical presence before the court, a fact which supports Petitioners' argument that "appear" and physical presence are one in the same. The Magistrate Judge ignored the "[p]resumption that a given term is used to mean the same thing throughout a statute . . ." *Brown*, 513 U.S. at 118. The Court agrees with Petitioners that there is no reason to believe that Congress intended a different meaning of the word "appear" found in § 4208 than the definition of "appear" found within other statutes of Title 18.

Although "appear," as that word is used in § 4208(e) is not ambiguous when reviewed in the context by which the word is used, and the fact that physical presence is mandated by the use of the word "appear" in other statutes found in Title 18, it also is true that when enacting § 4208(e), Congress could not have contemplated the use of video conferencing as it is currently utilized in our modern day judicial system. As such, this fact may create ambiguity in the word "appear," because Congress has not "spoken to the precise question at issue," that is whether the word "appear" in § 4208(e) requires in-person presence or whether the use of video broadcast at Petitioners' parole

---

[5] *See* 18 U.S.C. § 1429 ("Any person who has been subpoenaed . . . to appear at the final hearing of an application for naturalization, and who shall neglect or refuse to so appear and to testify, . . .shall be fined under this title or imprisoned not more than five years, or both.") *See also* 18 U.S.C. § 4285 (providing for non-custodial transportation for indigent defendants released pending trial when "[t]he defendant is financially unable to provide the necessary transportation to appear before the required court on his own . . .") *See also* 18 U.S.C. § 3146 (providing for punishment of those failing to "[a]ppear before a court as required by the condition of release . . .") *See also* 18 U.S.C. § 3005 (allowing defendants indicted for capital crimes "[t]o compel [] witnesses to appear at trial . . .").

release hearings is sufficient under the statute. This ambiguity requires this Court to determine whether the Parole Commission's answer to this question "is based on a permissible construction of the statute." This Court finds that it is not.

Although the Court disagrees with the Report and Recommendation in its conclusion, it does agree that Petitioners reliance on cases applying Rule 43 of the Federal Rules of Criminal Procedure is misplaced. In the cases cited by Petitioners, it is clear that each court relied on the language of the statute in rendering its decision that the use of video conferencing is contrary to the express mandate of the statute, which requires a defendant to be "present" at all stages of the trial.[6] The issue in this matter revolves around the definition of the word "appear", and not "present." As such, these cases are inapplicable to the precise issue before this Court and can not be used as a basis for determining that video conferencing is contrary to the express language of § 4208(e).

The Magistrate Judge found that the Commission's interpretation of § 4208(e) was reasonable because "[t]he clear purpose of the appearance requirement is to permit the prisoner to effectively participate in the parole determination proceeding." (Rep. and Rec., p.10, ¶ 2). The Magistrate Judge relied on the fact that Petitioners did not demonstrate how the use of video conferencing prohibited effective participation in the parole determination proceeding. (*Id.*) The Magistrate Judge relied on the Commission's assertion that,

> [v]ideo conferencing technology has worked well. Video and audio transmissions are clear and the hearings are seldom interrupted by technical difficulties. The prisoner's ability to effectively participate

---

[6] Fed. R. Crim. P. 43(a) states:

**Presence Required**: The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

6

> in the hearing has not been diminished by the use of video conference procedure.

70 Fed. Reg. 19,262(April 13, 2005). The Magistrate Judge failed to address the fact that when the Commission began the pilot project and issued an interim rule at 28 C.F.R. § 2.25 regarding the video conferencing procedure, it expected to conduct less than 10% of the total parole release caseload, estimating the project would not exceed 180 hearings. 69 FR 5273-74 (Feb. 4, 2004). In fact, the Commission conducted a total of 102 parole release hearings during the project before determining that all parole release hearings, as well as institutional parole revocation hearings would now be conducted by video conferencing. (Gov.'s Res. to Pet., p. 7, ¶ 2) This Court fails to see how conducting less than 10% of the parole release hearing caseload justifies the sweeping conclusion that "the prisoner's ability to effectively participate" in his parole release hearing "has not been diminished" by the utilization of video conferencing. Additionally, the express language of the Commission that "the hearings are *seldom interrupted by technical difficulties*" leaves this Court doubtful that video conferencing at a prisoner's parole release hearing is the "functional equivalent" of taking "live, in-person testimony" satisfying constitutional due process considerations. *Valenzuela-Gonzalez* v. *United States*, 915 F. 2d 1276, 1280 (9th Cir. 1990)*(quoting Maryland* v. *Craig*, 496 U.S. 836, 851; 110 S. Ct. 3157; 111 L. Ed. 2d 666 (1990)(emphasis added)).

While "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz* v. *Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7; 99 S. Ct. 2100; 60 L. Ed. 2d 668 (1979), "[i]f state law entitles an inmate to release on parole, [] that entitlement is a liberty interest which is not to be taken away without due process. *Inmates of Orient Correctional Institute* v. *Ohio State Adult Parole Authority*, 929 F. 2d 233, 235 (6th Cir. 1991) (citing *Greenholtz*, 442 U.S. at 12.) The state statute at issue in

*Greenholtz*, where the Supreme Court found that prisoners were entitled to some measure of due process at a parole release hearing, is similar to the federal statute at issue in the present matter. Both statutes mandate that prisoners eligible for parole "shall be released" unless it is determined that release should be denied for specified reasons in the statute.[7] Additionally, the Sixth Circuit has stated that "[a]though incarceration itself represents quintessential deprivation of liberty, lawful

---

[7] In *Greenholtz*, the Supreme Court stated that,

> Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
> "(a) There is a substantial risk that he will not conform to the conditions of parole;
> "(b) His release would depreciate the seriousness of his crime or promote disrespect for law;
> "(c) His release would have a substantially adverse effect on institutional discipline; or
> "(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." Neb. Rev. Stat. § 83-1,114 (1) (1976). *Greenholtz*, 442 U.S. at 11.

The statute at issue in this matter states in relevant part,

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms,, or after serving thirty years of each consecutive or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. § 4206(d).

incarceration does not extinguish all of a prisoner's constitutionally protected liberty." *Inmates of Orient Correctional Institution,* 929 F. 2d at 235 (citing *Olim* v. *Wakinekona*, 461 U.S. 238, 245; 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983)). Since the statute at issue in this matter provides Petitioners with a liberty interest under *Greenholtz*, Petitioners must be afforded some measure of due process at their parole release hearings. When the federal Government seeks to deprive an individual of a liberty interest, a determination of what administrative procedures are sufficient under the Due Process Clause of the Fifth Amendment must be conducted. *Vitek* v. *Jones*, 445 U.S. 480, 495-96; 100 S. Ct. 1254; 63 L. Ed. 2d 552 (1980). It must be determined whether video conferencing meets these due process requirements.[8] The Supreme Court has outlined three factors that must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews* v. *Eldridge*, 424 U.S. 319, 335; 96 S.Ct. 893; 47 L.Ed. 2d 18 (1976).

In evaluating the first factor, the purpose of parole should be addressed at the outset. As

---

[8] While not factually on point, at least one court has held that a parolee stated a cause of action under the due process clause regarding the use of video conferencing at his parole revocation hearing, where,

> [t]he camera was positioned in such a way to prevent Wilkins and his counsel from making eye contact with the witnesses, along with the camera freezing on several occasions, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses is sufficient to state a claim that the procedure used did not meet the minimal due process requirements as set forth in *Morrisey*.

*Wilkins* v. *Wilkinson*, No. 01AP-468, 2002 WL 47051 (Ohio App. 10 Dist.).

9

the Supreme Court stated in *Morrissey*,

> [d]uring the past 60 years, the practice of releasing prisoners on parole before the end of their sentences has become an integral part of the peneological system. . .[i]ts purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison.

*Morrissey* v. *Brewer*, 408 U.S. 471, 477; 92 S. Ct. 2593; 33 L. Ed. 484 (1972). Early release from incarceration functions to rehabilitate the individual by introducing him back into society, usually with certain conditions, such as prohibiting parolees from drinking alcohol, leaving their state of residence without approval, and from having contact with ex-felons. Parole accelerates rehabilitation of the individual because it enables parolees to "[b]e gainfully employed and . . . be with family and friends and to form other enduring attachments of normal life." *Id.* at 408. In *Baker*, the Fourth Circuit addressed whether the use of video conferencing in a prisoner's involuntary commitment hearing violated due process considerations. The Court stated when evaluating the nature of the interest involved,

> [T]he involuntary commitment of an individual is a substantial curtailment of that individual's liberty. However, while substantial, the curtailment is not as great as the curtailment inherent in criminal imprisonment. The Government's efforts to civilly commit a person are not punitive in nature . . .*[c]onfinement in prison is punitive and hence more onerous than confinement in a mental hospital*.

*United States* v. *Baker*, 45 F. 3d 837, 844 (4th Cir. 1995)(*quoting Heller* v. *Doe by Doe*, 509 U.S. 312, 113 S. Ct.2637, 2645, 125 L. Ed. 2d 257 (1993)(emphasis added)). The nature of the interest in early release from incarceration, or parole is substantial. The significance and importance of parole to Petitioners' rehabilitation illustrates why a fair process in determining whether an individual is ready for parole is required.

As to the second factor under *Mathews*, the risk of erroneous deprivation of early release from

10

incarceration is great. The use of video conferencing does not provide fair process because the main issue in a parole release hearing is whether or not a prisoner is equipped with the skills to successfully be released. The hearing examiner can not make the necessary subjective decision of whether an individual is suitable for parole when that individual is not standing before the examiner. The hearing examiners' impressions of the prisoner forms the basis of their ultimate decision of whether or not to grant parole. "[V]ideo conferencing creates the risk of a disconnect that can occur because the immediacy of a living person is lost. In the most important affairs of life, people approach each other in person and television is no substitute for direct personal contact." *U.S.A.* v. *Navarro*, 169 F. 3d 228, 239 (5th Cir. 1999)(addressing whether video conferencing at the defendant's sentencing violated Rule 43 of the Federal Rules of Criminal Procedure), *see also Stoner* v *Sowders*, 997 F 2d 209, 213 (6th Cir. 1993). The risk is great that the use of video conferencing will lead to erroneous decisions by the Commission, as the reminder that they are dealing with real individuals will be lost during the transmission of Petitioners' testimony, as will the examiners' ability to assess Petitioners' capacity to successfully live in society during the remainder of their sentences. "[V]irtual reality is rarely a substitute for actual presence and that, even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it." *U.S.* v. *Lawrence*, 248 F. 3d 300, 304 (4th Cir. 2001)(determining that Federal Rule of Criminal Procedure 43 requires a defendant's physical presence at arraignment). Additionally, the Court recognizes that video conferencing creates the additional hardship of exchanging documents. Examiners will be evaluating a prisoner's potential success on parole on the basis of his institutional file. It is not uncommon for erroneous information to be placed in a prisoner's file. If an incorrect misconduct report evidencing a prisoner's previous unruly or otherwise disruptive behavior becomes an issue during the proceeding, it is unclear how the examiner can pass along the misconduct report to the prisoner to

show what specific document the examiner has based his decision upon. The examiner and prisoner are in separate rooms, hundreds of miles away. It should also be noted that if parole is denied, the statute gives prisoners the right, where "feasible", to have a personal conference with an examiner after the hearing:

> If parole is denied, a personal conference to explain the reasons for such denial shall be held, if feasible, between the prisoner and a representative of the Commission at the conclusion of the proceeding. When feasible the conference shall include advice to the prisoner as to what steps may be taken to enhance his chance of being released at a subsequent proceeding.

18 U.S.C. 4208(g). It seems that video conferencing has all but destroyed this right as inmates will not receive a personal interview with an examiner after the hearing.

Lastly, the Government's interest in financial savings from reduced travel costs has not been adequately demonstrated by the Government. The District of Colombia Circuit has held that video conferencing may be justified notwithstanding the presence requirement of Federal Rule of Criminal Procedure 43, if the Government demonstrates the procedure is necessary. In *Valenzuela-Gonzalez*, since the Government did not argue the use of video conferencing at the defendant's arraignment was necessary, but that it was merely convenient, the Ninth Circuit held that arraignment by "closed circuit television d[id] not constitute substantial compliance with either Rule 10 or Rule 43." *Valenzuela-Gonzalez* v. *United States of America*, 915 F. 2d 1276, 1281 (9th Cir. 1990). This reasoning is persuasive to the instant matter, the Government has not demonstrated the necessary cost or resource savings that video conferencing provides the Commission, only stating that it "[i]s conducting hearings for a small number of prisoners at facilities that are difficult to reach." 69 FR 5273-74 (Feb. 4, 2004). While the Court is cognizant of the Commission's financial concerns, the use of video conferencing has not been shown either to be fiscally necessary nor has its effectiveness

12

been adequately demonstrated to justify its utilization.

The Magistrate Judge's reliance on other state and federal courts' decisions to utilize video conferencing is misplaced. First, other courts have allowed the use of this technology only where "[t]here is no violation of some specific constitutional right." *Commonwealth* v. *Ingram*, 46 S.W. 3d 569, 571 (Ky. 2001). It has been determined that the use of video conferencing infringes upon Petitioners right to due process during their parole release hearings. Second, each case is distinguishable from the case before the Court. For instance, in *Commonwealth*, the Supreme Court of Kentucky reversed the decision of the trial court, which terminated the use of a video arraignment system in Jefferson County. The Supreme Court of Kentucky held that the district court did not address which due process rights were violated by the use of the video arraignment system. Furthermore, *Commonweatlh* dealt with arraignment, not parole release or revocation hearings. In fact, no federal court has addressed or upheld the Commission's use of video conferencing at parole release and revocation hearings.

Likewise, *Maryland* is distinguishable from the present matter. In *Maryland*, the Supreme Court held that child victims of sexual abuse could testify outside of the courtroom through one-way closed circuit television. *Maryland*, 496 U.S. at 857. The Supreme Court upheld the use of this technology against the argument that it violated the defendant's Sixth Amendment rights under the Confrontation Clause. The decision rested upon the public policy and substantial Governmental interest in protecting the welfare of child sexual abuse victims.[9] Also, the Supreme Court held that before the use of video conferencing technology could be utilized, a case specific finding of necessity

---

[9] "We likewise conclude today that a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853.

was required to determine whether forcing the child to testify in front of the defendant would cause psychological damage. *Id.* at 857. This is distinguishable from the present case where there is no comparable public policy involved nor has the necessity for video conferencing been demonstrated.

Respondents and the Magistrate Judge also rely on the Fourth Circuit's decision in *Baker*, where the use of video conferencing at a prisoner's involuntary civil commitment hearing was upheld. *Baker* is also distinguishable from the present matter for a variety of reasons. First, as has already been noted, the Fourth Circuit held that civil commitment was less onerous than incarceration and that "[t]he Government's efforts to civilly commit an individual are not punitive in nature." *Baker*, 45 F. 3d at 844. Part of the Court's decision rested upon this fact, as well as the "[s]light risk of erroneous committal . . ." Both of the above supporting reasons are inapplicable to Petitioners' circumstances. Secondly, the Government's interests in *Baker* were considerable in comparison to the Government's concerns here. In *Baker*, the prisoner was a paranoid schizophrenic who refused to stay on his medication. *Id.* at 841.[10] Part of the Fourth Circuit's reasoning rested upon the danger in transporting mentally unstable individuals.[11] The Government in the instant matter has not asserted a similar concern or need for safety in regard to transporting prisoners for parole release hearings. Instead the Government only argues that fiscal considerations require video conferencing at Petitioners' parole release hearings. This is simply not a sufficient Government interest, especially in light of the fact that this need has not been adequately demonstrated as discussed above.

---

[10] Mr. Baker "[r]equired continual seclusion due to inappropriate behaviors and florid psychosis." *Id.*

[11] "From an administrative standpoint it is difficult to transport potentially mentally unstable persons to a courthouse. Many such persons require medication and supervision . . . the safety concerns inherent in transporting a potential mentally unstable person to a courthouse, with respect to respondent and other parties, are substantially alleviated by the use of video conferencing procedures. *Id.* at 847.

Additionally, the Fourth Circuit rejected Mr. Baker's contention "[t]hat the key factor in any commitment hearing is the impression the respondent makes on the presiding judge." *Id.* at 845. The Court found that whether or not to commit a prisoner was not based upon the district judge's assessment of the individual, but upon "documentary and testimonial evidence of the respondent's mental competency" prepared and given by medical experts. *Id.* The decision to grant or deny parole at Petitioners' hearings will be based not only on their institutional records, but on the examiners' assessments of them, their candor and overall demeanor at the hearing. This information can not be conveyed nor adequately assessed over video broadcast in the same manner as an in-person parole release hearing. For the above reasons, reliance on *Baker* is inappropriate and does not support the Government's argument that the Commission reasonably interpreted § 4208(e).

In conclusion, the Court finds that the liberty interest in early release on parole is substantial, and the risk of erroneous deprivation of this interest, coupled with the absence of any showing by the Government of its administrative benefits renders video conferencing inadequate to satisfy due process considerations. The Commission's interpretation of the word "appear" in § 4208(e) is unreasonable, in-person presence before the hearing examiners is required at Petitioners' parole release hearings.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Report and Recommendation of Magistrate Judge Paul Komives [**Docket No. 9, filed February 3, 2006**] is REJECTED as more fully set forth above.

IT IS FURTHER ORDERED that Petitioners' petition for writ of habeas corpus [**Docket No. 1, filed June 14, 2005**] is GRANTED. The remedy is limited to compelling the Parole Commission to conduct a hearing in accordance with this Opinion since there has been no showing of bad faith. *See Heath v. United States Parole Comm'n,* 788 F.2d 85, 89 (2d Cir. 1986).

IT IS FURTHER ORDERED that the Parole Commission hold a hearing within 90 days from the entry of this Order.

                                      s/ DENISE PAGE HOOD
                                      DENISE PAGE HOOD
                                      United States District Judge

DATED: September 30, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2007, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager